## Dunn verſ. Scollay. (1)

### Caſe of Hoſtage & Ranſom.

AUTHORITIES in Favour of the Plaintiff were, Molloy (old Edit.) 205, § 10, 212, § 14, 213, § 14; Molloy (new Edit. 1744) 358, 237–8,

---

(1) This action was firſt brought in the Court of Vice Admiralty, to which Court a prohibition was iſſued and confirmed, on argument, by the Superior Court. See *ante*, p. 74. The plaintiff then brought his action in the Court of Common Pleas, and recovered judgment for £700; from which judgment the defendants appealed to this Court. From the various papers on file, it appears that the caſe was as follows:

The Brigantine Peggy, belonging to John Scollay of Boſton, con-ſigned to Wm. Sitwell, London, was, on the 26th October, 1756, taken at ſea by the French privateer Entreprenante, then returning from trad-ing in negroes on the coaſt of Guinea. The captain of the Peggy drew a ranſom bill on the conſignee, and ſent Dunn, the firſt mate, with the French captain as a hoſtage. The Peggy proceeded on her voyage, but again fell into the hands of the enemy, and was taken into Bourdeaux, where the captain died in priſon. Dunn in the meanwhile had been committed to the priſon of Bouffay at Nantz, where he remained in a ſick and deſtitute condition. Sitwell claimed that the underwriters ſhould pay the ranſom money for his diſcharge, but, as they refuſed, he wrote

1765.

DUNN
v.
SCOLLAY.

237–8, 244–5; 2 Ld. Raymond, 931; Ld. Holt's
Opinion relied on; Sea Laws, 128.

In Favour of the Defendant were, 2 Chancery
Caſes, 239; 1 Salk. 35; 3 Bacon, 592, 595. (2)

---

wrote to Dunn, that there was "no Way to compell them without
Law, and that would be attended with great Uncertainty, as this, they
ſay, is a Caſe has not been try'd " — and alſo that he was inſtructed by
Scollay to ſettle without regard to the ranſom bill.     He did, however,
allow Dunn 1s. per day for his ſupport in priſon.     In a letter from
Scollay to Sitwell, after the former had heard of the firſt capture and
ranſom, he claimed that, as he had given the captain no orders to ran-
ſom the veſſel, if taken, the money muſt be paid either by the inſurers or
the captain ;  but, as the latter might not be able to do ſo, if the ſhip were
loſt, he directed Sitwell to inſure for Dunn's benefit the amount of the
ranſom money on the veſſel and cargo, offering to be reſponſible himſelf
for the premium.     Before this letter was received, it is probable that
news arrived of the ſecond capture.     Dunn remained in priſon ſix
years, and his final liberation is thus deſcribed in a letter from Sit-
well :

"Jno. Dunn, yt was Freeman's Mate, has at length obtained his
"Diſcharge.   His Friends compounded ye Affair for about £200, and
"have ſent about a Subſcription to raiſe ye Money. — I thought the
"Affair would have ended here, but his Friends are of Opinion
"yt ye Owners are liable to make good all Damages, & have adviſed
"him to go over & endeavour to recover it.   They have taken ye Opin-
"ion of ſome of ye beſt Counſel here, wch are in his Favour. — How
"your Courts may determine this Affair, if it ſhould come to Tryal, I
"know not."

From the authorities cited, it would ſeem probable that the caſe
turned upon the queſtion of the maſter's power to bind the owner by a
contract of ranſom, without ſpecial orders to that effect ; and, that the
ruling of the Court was againſt the plaintiff, ſeems probable from the
verdict, which was for the appellant, reverſion of the former judgment
and coſts.

(2) This liſt of authorities was at firſt ſuppoſed to refer to the former
caſe, and was accordingly printed in a note to page 83.